IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DONNA JEAN MOXLEY, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-731-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### A. STATEMENT OF THE CASE

Plaintiff Donna Jean Moxley filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). On November 14, 2005,[1] Moxley filed an application for SSI benefits, with a protective filing date of November 14, 2005. (*See* Transcript

[1] The court notes that the "Application Summary for Supplemental Security Income" states that Moxley applied for SSI on November **17**, 2005. (Transcript 47.)

("Tr.") 9; *see* 47-53, 62.)[2] She alleged that she became disabled on November 1, 2000 due to osteoarthritis, depression, and obesity. (Tr. 9, 62; *see* Tr. 65-70.)

Her application was denied initially and on reconsideration, and Moxley filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 9; *see* Tr. 29-45.) On July 11, 2007, the ALJ held a hearing and issued a decision on August 28, 2007 that Moxley was not entitled to SSI benefits. (Tr. 6-17; *see* Tr. 22-26A.) The Appeals Council denied Moxley's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.

B. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.[3] The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix

[2] Moxley had previously filed numerous applications for SSI payments, which were all denied. (Tr. 9.)

[3] In addition, numerous regulatory provisions SSI benefits. *See* 20 C.F.R. Pt. 416.

to the regulations. 20 C.F.R. § 416.920(d); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

C. ISSUE

1. Whether the ALJ complied with the requirements of Social Security Ruling ("SSR") 96-6p when he did not obtain an updated medical opinion of a medical expert as to the issue of medical equivalency.[4]

D. ADMINISTRATIVE RECORD

1. Relevant Treatment History[5]

Moxley was treated at Shaw Medical Center from approximately 1994 through December 2005 for a variety of ailments, including depression, arthritis, cold-type symptoms, ankle pain, and high blood pressure. (Tr. 103-17.) She was prescribed a variety of medications to help treat these ailments. *Id.* Moxley was also treated from 2003 through 2006 at University Park Family Medicine[6] for a variety of similar ailments, including obesity, high blood pressure and swollen ankle, feet, and hands. (Tr. 164-71).

Scott Spoor, M.D. referred Moxley to Bobbie Hart Lilly, Ph.D., for a psychological evaluation of Moxley's depression as related to her disability benefits.[7] (Tr. 122-28.) On

[4] In her brief, Moxley states that the issue is "[w]hether the ALJ complied with the requirements of 20 C.F.R. [§] 416.927(f) when he failed to obtain an updated medical opinion of a medical expert as to medical equivalency." (Pl.'s Br. at 4.) However, because Moxley focuses her analysis on whether the ALJ failed to comply with portions of Social Security Ruling 96-6p, the court has rephrased the issue accordingly. (*See* Pl.'s Br. at 4-8.)

[5] With respect to applications for SSI, the first month for which SSI benefits can be paid is the month after the SSI application was filed regardless of how far back in time disability may extend. 42 U.S.C. § 1382(c)(7) (2009); 20 C.F.R. § 416.335 (2009). Consequently, the court will focus on the medical history that pertains to whether Moxley was under a disability on November 14, 2005, the protective filing date, or at any time thereafter. *See id*.

[6] It is unclear from the record whether such treatment all took place at University Park Family Medicine or whether some took place at Shaw Medical Center, P.A. (*See* Tr. 164-71.)

[7] The court notes that Lilly previously performed a psychological evaluation on Moxley on January 5, 2004. Lilly diagnosed Moxley with moderate major depression single episode, moderate expressive writing disorder, and borderline intellectual functioning, and Lilly opined, in essence, that due to Moxley's need for no interaction with the public, Moxley would probably do well in some type of quality control or assembly work. (Tr. 118-21; *see* Tr. 11-12.)

February 6, 2006, Lilly interviewed Moxley, gave her a series of tests, and diagnosed her with mood disorder due to multiple health problems with depressive features, obesity, hypertension, and chronic pain. (Tr. 126.) Lilly also indicated that Moxley was having occupational problems and stated that, due to Moxley's chronic and progressive health concerns, "it is not considered reasonable to expect her to return to work in a competitive environment at this time." (Tr. 126-27.)

In March 2006, Moxley was seen by Edward Bates, M.D., for a consultative physical rehabilitation examination. (Tr. 130-31; *see* Tr. 12.) Bates noted that Moxley had suffered a left ankle fracture in 1998 when she fell off a ladder and that since that time she experienced continual pain in the ankle. (Tr. 130.) Moxley reported to Bates that she could walk less than one block and stand for about two hours per day, but no more than one hour continuously. (*Id*.) Bates diagnosed Moxley with chronic pain in her left ankle, "s/p left ankle fracture," hypertension, and chronic back pain. (Tr. 131.) Bates opined that Moxley could sit, stand, speak, handle objects, and hear and speak normally. (*Id*.) He also stated that she had no back spasms or muscular atrophy and no motor, sensory or reflex changes. (*Id*.)

In a Physical Residual Functional Capacity Assessment ("RFC") dated March 8, 2006, Bonnie Blacklock, M.D., diagnosed Moxley with chronic back pain, obesity, and "HTN" and opined that Moxley could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday and had the unlimited ability to push and/or pull. (Tr. 155-63.)

On March 9, 2006, Charles Lankford, Ph.D., completed a Psychiatric Review Technique

Form ("PRTF"), Form SSA-2506-BK, in which he opined that: (1) Moxley suffered from Affective Disorders in Section 12.04 of the Listing of Impairments ("Listing"), (2) an RFC Assessment was necessary, and (3) coexisting nonmental impairments existed that required Moxley to be referred to another medical specialty. (Tr. 133; *see* Tr. 133-147.) Lankford also indicated that Moxley suffered from a mood disorder due to multiple health problems w/ depressive features, which was a medically determinable impairment that did not precisely satisfy the diagnostic criteria of section 12.04 of the Listing. (Tr. 136.) He also opined that Moxley was moderately limited in her activities of daily living, had moderate difficulties in maintaining social functioning, and had mild difficulties in maintaining concentration, persistence, or pace. (Tr. 143.)

In a Mental Residual Functional Capacity Assessment ("MRFC") dated March 9, 2006, Lankford also opined that Moxley was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (Tr. 150-53.)

A Disability Determination and Transmittal ("DDT") Form, Form SSA-831-U3, dated March 13, 2006 and signed by Bonnie Blacklock, M.D., indicates that Moxley was diagnosed with chronic low back pain and morbid obesity and was not disabled through the date of that

determination.[8] (Tr. 27.) In a Daily Activity Questionnaire dated May 26, 2006, Moxley indicated that she did not have many friends and did not do much around the house except wash a few clothes and watch television due to her depression. (Tr. 77-81.)

On June 19, 2006, Robert White, Ph.D., stated in a Case Assessment Form ("CAF") that he had reviewed all the evidence in the file, the PRTF, MRFC, and affirmed the assessment of March 14, 2006[9] as written. (Tr. 148.) He further indicated that Moxley had a mood disorder with depressive features due to multiple health problems. (*Id.*) Another DDT Form, dated June 24, 2006 and signed by James Wright, M.D., also diagnosed Moxley with chronic low back pain and morbid obesity and indicates that she was not disabled through the date of that determination. (Tr. 28.) Also, on June 24, 2006, Wright noted in a CAF that Moxley had chronic low back pain, morbid obesity and hypertension and stated that he had reviewed all evidence in the file and the RFC and that the assessment of March 14, 2006 was affirmed as written. (Tr. 154.)

2. Administrative Hearing

Moxley was born on September 18, 1959, dropped out of high school in the eleventh grade, and has no other training or education. (Tr. 174-75; *see* Tr. 15.) She previously worked as a fast food cook and, briefly, at a school. (Tr. 175, 179-80; *see* Tr. 13, 15-16.) At the July 11, 2007 hearing, Moxley testified that she broke her ankle when she fell off a ladder in 1998 and that she has not been able to go back to work because she can't stand, walk or do the work. (Tr.

[8] This form also indicates that it was reviewed by Ian McAdams, a disability examiner, on March 14, 2006. (Tr. 27.)

[9] This apparently refers to the DDT Form that was signed by Blacklock on March 13, 2006 and reviewed by McAdams on March 14, 2006. (*See* Tr. 27.)

175, *see* Tr. 13.) She further stated that she needed to have surgery to have the ankle fused together and that her ankle caused her a lot of pain. (Tr. 175, 178; *see* Tr. 10.) She also testified that she was trying different medications to treat her depression. (Tr. 176-77.) She further stated that she spent her time in bed or at her house, had trouble sleeping, did not drive because it made her nervous and her medication makes her dizzy, weighed approximately 290 pounds, and could not read or write very well. (Tr. 177-80.)

John Simonds, M.D. and Psychiatrist also testified at the hearing. (Tr. 181-84.) Simonds stated that he had reviewed Moxley's medical records and noted that she had left ankle degenerative changes with symptoms of pain and swelling, difficulty walking or standing for long periods of time, walked with a limp, had hypertension that was controlled with medicine, borderline intelligence quotient in the seventies, major depression and a self-reported moderate mood disorder. (Tr. 183.) He opined that none of her conditions would meet a specific impairment in the Listing. (*Id.*) He also stated that she should be limited to employment that was sedentary and involved simple instructions. (*Id.*)

Todd Harden, a vocational expert, also testified at the hearing. He stated that Moxley would not be able to perform her past work as a fast food cook. He opined that based upon her limitations, she would be able to perform jobs as a final assembler, stuffer, patcher, or call out operator. (Tr. 185.)

3. ALJ Decision

The ALJ, in his August 28, 2007 decision, found that Moxley had not engaged in any substantial gainful activity at any time since the SSI application was filed on November 14, 2005. (Tr. 10.) He also found that Moxley's impairments did not meet or equal the criteria of

any of the impairments in the Listing, stating:

> The evidence supports a finding that the claimant has chronic left ankle pain due to a history of internal fixation of a fractured left ankle (1998), low back pain due to obesity, depression, and borderline intellectual functioning, impairments which cause significant vocationally relevant limitations.
>
> Dr. John Simonds, a medical expert, testified at the hearing that the claimant's impairments did not meet or equal the criteria of any of the listed impairments described in Appendix 1, of the Regulations. Additionally, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.

(Tr. 10.)

He further found that Moxley retained the RFC to work at a sedentary level of exertion with no prolonged walking or standing over ten minutes in a position that involved simple instructions. (Tr. 16.) He also found that, although Moxley was unable to return to past relevant work as a fast food cook, there was work that existed in significant numbers in the national economy that she could perform; consequently, she was not disabled. (Tr. 10, 16.)

E. DISCUSSION

Moxley argues that the ALJ did not comply with the requirements of SSR 96-6p when he failed to obtain an updated medical opinion of a medical expert on the issue of medical equivalency at Step Three of the five-step analysis. (Pl.'s Br. at 4.) The Commissioner argues, on the other hand, that the ALJ did not err because: (1) there were state agency medical consultant ("SAMC") opinions in the record regarding the issue of medical equivalency as to Moxley's back pain, obesity, and mental impairments which the ALJ could rely on, (2) the ALJ did accord probative weight to the state SAMCs' findings and that any rejection of the findings only related to the issue of "functional capacity", (3) although not required, the ALJ did call a

medical expert, who testified that none of Moxley's impairments met the criteria in any impairment in the Listing, and (4) the failure of the medical expert to use the term "equal" in his testimony is not reversible error because Moxley has not shown she was prejudiced from such error. (Def.'s Resp. at 5-8.)

To obtain a disability determination at Step Three, a claimant must show that his impairments meet or equal one of the impairments in the Listing, 20 C.F.R. Pt. 404, Subpt. P, App. 1. As a threshold matter, the ALJ is responsible for ultimately deciding the legal question whether a listing is met or equaled. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996); *see generally* SSR 96-5p, 1996 WL 374183, at *3 (S.S.A. July 2, 1996); 20 C.F.R. §§ 416.926(e), 416.927(e). Whether a claimant's impairment meets the requirements of a listed impairment is usually more a question of medical fact than opinion because most of the requirements are objective and simply a matter of documentation, but it is still an issue ultimately reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *3. Whether the impairment is equivalent in severity to the requirements of a listed impairment requires a judgment that the medical findings equal a level of severity that prevents a person from doing any gainful activity. *Id.* at *4. Because a finding of equivalence requires familiarity with the regulations and the legal standard for severity, it is also an issue reserved to the Commissioner. *Id.* When determining whether an impairment medically equals a listing, the Commissioner considers all relevant evidence[10] in the record about such impairment, including findings from medical sources. 20 C.F.R. § 416.926(c) (stating that opinions that medical consultants

[10] Relevant evidence does not include the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 416.926(c).

designated by the Commissioner offer on the issue of medical equivalence will be considered). Medical equivalence must be based on medical findings that are supported by medically acceptable clinical and laboratory diagnostic techniques. *See generally* 20 C.F.R. §§ 416.926, 416.927.

"As a trier of the facts, an administrative law judge . . . is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing." SSR 96-6p, 1996 WL 374180, at *3. "However, longstanding policy requires the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight." (*Id.*) SSR 96-6p, which sets forth this requirement, states in pertinent part:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review. When an administrative law judge finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

SSR 96-6p, 1996 WL 374180, at *3.

The claimant has the burden of proving that her impairment or combination of

impairments meets or equals a listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment, no matter how severe, does not qualify if that impairment exhibits only some of the specified criteria. *Id.*

If a claimant does not exhibit all of the requisite findings of a listed impairment, medical equivalence may be established by showing that his unlisted impairment, or combination of impairments, is equivalent to a listed impairment. *Id.* at 531. To do so, the claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Zebley*, 493 U.S. at 531 (*citing* 20 C.F.R. § 416.926(a)). A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in duration and severity to the listing findings. *See id*. The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619-20.

In this case, there is no evidence that indicates the claimant's severe impairments or combination of impairments met or equaled an impairment in the Listing. In making his decision at Step Three, the ALJ, finding that Moxley had the severe impairments of chronic left ankle pain due to a history of internal fixation of a fractured left ankle, low back pain due to obesity, depression, and borderline intellectual functioning, focuses on two pieces of evidence: (1) the testimony of Simonds, the medical expert and (2) that no treating or examining physician had made "findings equivalent in severity to the criteria of any listed impairment." (Tr. 10.)

As noted above, pursuant to SS 96-6p, when an ALJ determines that an individual's

impairments are not equivalent to any listing, a DDT or other similar form satisfies the requirement that the ALJ receive expert opinion evidence on the issue into the record. SSR 96-6p, 1996 WL 374180, at *3. In this case, the evidence in the record before the ALJ includes multiple such documents.[11] (*See, e.g.*, Tr. 27, 28, 133-47, 148, 154.) Thus, the ALJ complied with this duty under SSR 96-6p. *See, e.g., Thomas v. Astrue*, 2009 WL 2777867, at *4-5 (N.D. Tex. Aug. 31, 2009); *Nemoede v. Astrue*, No. 2:05-CV-0129, 2008 WL 4332521, at *3-4 (N.D. Tex. Sept. 22, 2008); *Barnes v. Astrue*, No. H-07-4377, 2008 WL 5348225, at *7-9 (S.D. Tex. Dec. 22, 2008).

Moxley complains, however, that the ALJ should have obtained an updated medical opinion from a medical expert because the opinions in the record signed by the SAMCs are insufficient for two reasons: (1) none of the opinions considered the issue of whether Moxley's impairments equaled (as opposed to met) a listed impairment and (2) the opinions recognized only some of Moxley's impairments and wholly failed to recognize her impairments of an ankle fracture and learning disability. (Pl.'s Br. at 5-7.)

Generally, however, the decision to consult a medical expert or advisor is a discretionary one. *See Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989). The ALJ may ask for and consider opinions from medical experts on the nature and severity of an impairment or its equivalence to any listed impairment if the ALJ feels it is necessary, but, as stated above, the final responsibility for deciding whether an impairment meets or equals a listed impairment is reserved to the Commissioner. *Id*.; *see generally* 20 C.F.R. §§ 416.926(e); 416.927(e). SSR 96-

---

[11]The Court notes that the forms in the record were not technically SSA-831-U5 forms, as specified by SSR 96-6p. However, they appear to serve the purpose described in SSR 96-6p. *See, e.g., Field v. Barnhart*, No. 05-100-P-S, 2006 WL 549305, at *3 n.2 (D. Me. March 6, 2006).

6p **requires** the ALJ to obtain an updated medical opinion from a medical expert as to the issue of equivalency only in the following two circumstances:

> [1] When no additional medical evidence is received, but in the opinion of the [ALJ] . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> [2] When additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *4. *See generally* 20 C.F.R. § 416.926 (addressing determination of medical equivalence).

Based on evidence in the record, the ALJ found that Moxley's impairments did not met or equal any of the impairments in the Listing. In addition, the opinion of the ALJ and the evidence in the record indicate that the ALJ did not reasonably believe Moxley's impairments might be judged equivalent or that the additional medical evidence regarding Moxley's impairments might change the SAMCs' findings that such impairments were not medically equivalent to any impairment in the Listing. Thus, the ALJ was not required to get an updated medical opinion on the issue of equivalency. *See Thomas*, 2009 WL 2777867, at *4-5 (finding that the ALJ did not err in failing to obtain an updated medical opinion on the question of medical equivalence as to the plaintiff's visual impairments even when such issue did not arise until after the SAMC had reviewed the plaintiff's case and there was no physician or medical expert opinion in the record relating to such issue).

Moxley argues that there is evidence that the ALJ did believe that there was additional medical evidence that might change the SAMCs' findings regarding medical equivalency

because the ALJ stated that the "determination made by [SAMCs] are not accorded probative weight due to new and additional evidence presented at the hearings." (Def.'s Br. at 7; *see* Tr. 14.) Although the ALJ did make such statement, Moxley is taking the statement out of context. The ALJ made such statement at a later step in the sequential process when he was determining Moxley's RFC, and it had nothing to do with his decision regarding medical equivalency at Step Three. (*See* Tr. at 13-14.)

Nevertheless, although not required, the ALJ did obtain an updated medical expert opinion on the issue of medical equivalency from Simonds, who testified at the hearing that none of Moxley's impairments, including her ankle fracture and learning disability,[12] met an impairment in the Listing. Moxley argues that the ALJ should not have relied upon the opinion of Simonds at Step Three because Simonds only testified that Moxley's impairments did not meet any listed impairment and did not give an opinion whether Moxley's impairments equaled any listed impairment. However, Moxley's argument is not persuasive as the ALJ did not rely solely on the opinion of Simonds in making his decision at Step Three. Instead, the ALJ, in making his decision, also relied on the fact that no treating or examining physician had mentioned findings equivalent in severity to the criteria of any listed impairment. (Tr. 10.) Based on Simonds's testimony at the hearing as well as all the other evidence in the record, there is substantial evidence to support the ALJ's decision at Step Three. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (stating that the ALJ fully and fairly develops the record if there is sufficient evidence in the record for an informed decision). Because the issue of medical equivalence is reserved to the Commissioner, the ALJ complied with SSR 96-6, and there is

[12] The ALJ referred to Moxley's learning disability as "borderline intellectual functioning." (Tr. 10.)

substantial evidence in the record supporting the ALJ's determination regarding medical equivalency, there is no basis for remand on this issue. *See, e.g.*, *Thomas*, 2009 WL 2777867 at *5.

Furthermore, even assuming that the ALJ erred at Step Three, remand would be necessary only if the claimant's substantial rights have been affected. *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Brock*, 84 F.3d at 728 ("To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result.") (internal quotation marks omitted)); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

In this case, Moxley does not refer to any specific impairment in the Listing that is applicable nor has he presented any specific evidence or argument suggesting that any of his impairments meet or equal a listed impairment.[13] Furthermore, the record does not indicate a likelihood or even reasonable possibility that medical equivalence would be found based on Moxley's impairments. The ALJ sufficiently identified the rationale underlying his adverse finding at Step Three, and Moxley has not demonstrated that she suffered substantial prejudice as a result of any alleged deficiencies in the ALJ's discussion.

[13] Moxley does reference two medical opinions, one from Lilly in February 2006 (Tr. 127) and one from Sudhakar Rumalla, M.D. in July 2003 (Tr. 96), in which the doctors opine that, in essence, Moxley's impairments precluded her from working. (Pl.'s Reply at 2-3.) However, opinions that a claimant is disabled are not medical opinions, but are instead opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case. 20 C.F.R. § 416.927(e).

RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until February 9, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until February 9, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7)

days of the filing date of the objections.

      It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

                                 SIGNED JANUARY 19, 2010.

                        /s/ Charles Bleil
                        CHARLES BLEIL
                        UNITED STATES MAGISTRATE JUDGE